**MELINDA JO AUSTIN,**

Plaintiff,

v.

Case No. 6:24-cv-03154-JAM
**JURY TRIAL REQUESTED**

**DWAYNE MCATEE, individually, and**

**CITY OF NIANGUA, MISSOURI**
**by and through its Board of Aldermen**

Defendants.

# FIRST AMENDED COMPLAINT

**COME NOW** Plaintiff, and for her First Amended Complaint, filed in compliance Rule 15(a), states to the Court as follows:

## ALLEGATION OF JURISDICTION AND VENUE

1. This action is brought for equitable relief and damages under 42 U.S.C. §§ 1983 (the Ku Klux Klan Act of 1871), 1985 and 1986 ("the Civil Rights Act") and for equitable relief under 28 U.S.C. §§ 2201 and 2202 concerning violations by defendants of rights secured to Plaintiff by the First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution.  Attorney fees, costs and expert witness costs are sought pursuant to 42 U.S.C. 1988.

2. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. 1343 in that Plaintiff has brought federal question claims for violations of his constitutional rights as provided by 42 U.S.C. § 1983.  This court has supplemental jurisdiction of the pendent

state law claims. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that more than the defendant resides or may be found in this District and Division, and in that the events giving rise to this claim occurred within this District and Division, and specifically within Niangua, Webster County, Missouri.

3. This Court has personal jurisdiction over the Defendants, as the Defendants are (a) a resident and citizen of Missouri and/or (b) a political subdivisions / municipality of the State of Missouri.

## GENERAL ALLEGATIONS

4. Plaintiff is an individual domiciled in Webster County, Missouri.

5. Plaintiff is the natural mother of Dylan Austin, deceased.

6. Defendant City of Niangua is a fourth class city in Missouri and can be served through its Board of Aldermen.

7. Defendant McAtee is an individual domiciled in Missouri and at all times pertinent hereto was an employee of City of Niangua, Missouri. He is sued in his individual capacity.

8. The occurrences described herein occurred within Webster County, Missouri.

9. Upon information and belief, prior to being hired by the City of Niangua, Missouri, McAtee had a history of violence and unlawful use of force / discharge of firearm.

10. While McAtee was with the Strafford Police Department, he fired 3 or 4 shots at an unarmed motorist. Upon information and belief his employment was separated thereafter.

11. Upon information and belief, McAtee had another incident with another agency where he wrongly discharged his firearm.

12. McAtee improperly targeted Austin for repeated and continual harassment and engaged in harassment of such severity and consistency as to cause Austin to lodge complaints against McAtee.

13. Neighbors relate that McAtee was engaged in actively stalking Austin.

14. Witnesses to McAtee's stalking of Dylan Austin include Kelsey Shockley and Brenda Turner.

15. McAtee told others he intended to "get" Austin and that Austin was his target.

16. Austin never engaged in any conduct to cause him to become a target of any law enforcement investigation.

17. Witnesses that heard McAtee lay out his plans to "target" and "get" Dylan Austin include, Samantha Johns, Nikki Starks, Brittany Davenpost, Tyler (last name unknown, but employed by City of Niangua).

18. Another witness who also heard others statements concerning McAtee pursuing Austin is Misty Hall.

19. Austin was well aware that McAtee had publicly professed his intention to "get" Austin.

20. Austin reasonably feared McAtee.

21. On March 13, 2024, McAtee initiated an illegal pursuit of Austin through the streets of Niangua, Missouri.

22. McAtee's pretext for stopping Austin was that he was operating his ATV without a light.

23. However, unknown to McAtee, multiple Niangua surveillance video cameras depicted Austin driving with a light, proving he was lying.

24. Fearing for his life, Dylan Austin attempted to reach a place of safety before stopping his ATV for McAtee and drove his vehicle to the Niangua Mayor's home, who he believed was aware of McAtee's harassment and stalking.

25. Upon arriving at the mayor's home, Austin did not find the mayor outdoors so Austin ran across the street to his mother, Melinda Austin's home.

26. McAtee pursued him, followed by a Webster County Sheriff's Department deputy.

27. McAtee had no warrant to enter Austin's home immediately prior to the shooting.

28. McAtee busted in the front door of Austin's home, gun drawn, and ran past a sleeping child.

29. The doctrine of hot pursuit did not allow McAtee to enter Austin's home for the purposes of arresting him immediately prior to the shooting without a warrant because he was not a suspect in a felony crime.

30. Hot pursuit for a misdemeanor municipal infraction, by itself, creates no necessity for dispensing with a warrant, and a warrantless arrest within the home cannot be justified upon hot pursuit alone.

31. The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: "The right of the people to be secure in their ... house ... shall not be violated."

32. At the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.

33. In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.

34. Before McAtee invaded the sanctity of Austin's home, McAtee was unable to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attach to all warrantless home entries.

35. Because McAtee's interest was likely to arrest for a minor offense, that presumption of unreasonableness is impossible to rebut, and the McAtee could only enter Austin's home to make such with a warrant issued upon probable cause by a neutral and detached magistrate.

36. McAtee fired no less than 8 shots towards Dylan Austin.

37. McAtee's sprayed, inaccurate gunfire struck a TV, Dresser, Wall, and Austin.

38. An unknown number of shots struck Austin and mortally wounded him.

39. Defendant McAtee, acting as a City of Niangua police officer and/or acting Chief of Police, shot and killed Dylan Austin in his mother's home after engaging in the pursuit of Austin for the suspected crime of operating a motor vehicle on a public roadway without lights.

40. McAtee shot Austin after illegally stalking Austin, following him about in public for no reason, harassing him, singling him out, targeting him and telling other members of the public he was going to get Austin.

41. At no time was McAtee in reasonable fear of death or serious bodily injury by Dylan Austin.

42. Plaintiff witnessed the shooting of her son by McAtee.

43. Other than McAtee and Plaintiff, no one else witnessed the shooting of Dylan Austin.

44. At the time he was shot, Austin was holding a black and yellow flashlight in his hand.

45. Upon information and belief, McAtee perceived or should have reasonably perceived and observed the flashlight in his hand.

46. However, desiring to harm Austin, McAtee yelled out "gun" and opened fire on McAtee who posed no perceptible immediate risk of death or serious bodily injury to McAtee.

47. Upon being shot, the flashlight, covered in blood, rolled under Austin's bed where it remained until after crime scene technicians, law enforcement and first responders left the scene.

48. During subsequent investigation, neither the Webster County Sheriff nor the Greene County Sheriff retrieved the flashlight.

49. Both the Webster County Sheriff and the Greene County Sheriff were advised, in writing, that evidence was left behind, uncollected.

50. After McAtee shot Austin, he failed and refused to administer first aid or CPR for over six (6) minutes although McAtee was trained as a first responder and was an Assistant Fire Chief in Missouri.

51. As a result of the actions and omissions of Defendants, Dylan Austin was killed.

52. All of the conduct on the part of Defendants described herein violated clearly established statutory or constitutional rights of which a reasonable person would have known.

53. City of Niangua was at all times responsible for (a) the operation of the Niangua Police Department, for the hiring, selection, training and supervision of its officer(s), and for the apprehension, arrest, control and treatment of all persons who are suspected of committing crimes in the City; (b) the safety, well-being, medical care and health needs

of suspects while being pursued by its police officers; (c) the establishment, dissemination and enforcement of policies and procedures related to pursuing suspects in patrol vehicles, "hot pursuit", entering the homes of its citizens without warrants; (d) the hiring, retention, evaluation and discipline of police officers; and (e) establishing policies, procedures and training on the use of force.

54. City of Niangua is required to and in fact does promulgate and approve policies and procedures, which govern and regulate the conduct of its police officers.

55. All of the conduct on the part of Defendants described herein were ministerial actions completed in compliance with and in reliance upon the City of Niangua's "official policy" or "governmental custom."

56. Alternatively, any discretionary acts by Defendants described herein were done in bad faith or with malice and/or with actual intent to cause injury to Plaintiff.

57. McAtee's ministerial duties regarding use of force, pursuit, obtaining a warrant, hot pursuit, etc. were clearly set forth by the City of Niangua, Missouri and in shooting Dylan Austin, McAtee violated his ministerial duties.

58. Alternatively, McAtee's actions were in his personal capacity as a private citizen pursuing an illegal agenda against Dylan Austin and as such, were outside the scope and course of his duties as a Niangua Police Officer and were not in his official capacity.

59. Alternatively, City of Niangua maintains a policy of insurance to cover Plaintiff's damages and has waived sovereign immunity to the extent of the insurance policy.

**COUNT I – 42 USC 1983 – Claim of Dylan Austin**

60. Plaintiff incorporates all preceding allegations by reference as if set out in full in this count.

61. Plaintiff has standing to bring this § 1983 action by virtue of Missouri Revised Statute 537.080.

62. The actions and omissions of Defendant McAtee were committed under color of state law and /or pursuant to policies, practices and procedures used with respect to the handling of unconvicted pretrial detainees accused of crimes.

63. Alternatively, the actions and omissions of Defendant McAtee were done intentionally, with the malicious intent to cause fear of injury and actual injury to Plaintiff, or with reckless disregard for the health, safety and welfare of Plaintiff.

64. Alternatively, the actions and omissions of Defendants were willful, wanton and malicious, or were taken with reckless disregard for the rights of Plaintiff.

65. As a direct and proximate result of the custom, practice, actions and omissions of these Defendants, Dylan Austin was deprived of his civil rights and liberties in violation of the Constitution, in that Plaintiff was:

    a. Deprived of his right to be secure in his home and his person;

    b. Deprived of his right to personal safety and freedom from excessive force and cruel and unusual punishment;

    c. Deprived of his right to procedural and substantive due process at law;

    d. Deprived him of his right to equal protection of the law.

    e. Effectively punished by Defendants even though Plaintiff had not been convicted of an offense by any court of law;

    f. Deprived of his right to privileges and immunities of the law;

66. One of the purposes of the Missouri wrongful death statute is to deter tortious or other harmful conduct that leads to death.

67. In enacting 42 USC 1983, Congress intended § 1983 to provide a "significant remedy for wrongful killings", to provide compensation to victims, and to "provide special deterrence for civil rights violations".

68. Plaintiff seeks damages on behalf of Dylan Austin in a fair and reasonable amount of $5,000,000.00.

69. McAtee's actions were evil, wanton, willful, and malicious justifying the imposition of punitive damages in the amount of $20,000,000.00 to punish McAtee and to deter McAtee and others from engaging in similar conduct in the future.

70. Plaintiff requests a trial by jury on all counts to which the right to a jury applies.

**WHEREFORE**, Plaintiff prays for judgment in her favor, for her costs and expenses herein and for such other relief as the Court deems just and proper.

### COUNT II – 42 USC 1983 – Melinda Austin

71. Plaintiff incorporates the foregoing paragraphs by reference as if set forth more fully herein.

72. All of the actions by Defendants as to Plaintiff Melinda Austin were under state law.

73. Defendant McAtee wrongfully entered Plaintiff's home without a warrant and without exigent circumstances and shot Plaintiff's son dead in front of her.

74. Defendant McAtee now only took the life of Plaintiff's son, but he damaged her property as well.

75. Plaintiff was in the zone of danger at the time McAtee shot Dylan Austin.

76. She witnessed the shooting and was at risk of bullets ricocheting and striking her.

77. She witnessed the shooting in the presence of a child who was asleep mere feet away.

78. As a direct and proximate result, she suffered medically diagnosable, medically significant emotional distress including fright, terror, anxiety, nightmares, trouble sleeping, elevated blood pressure and other physical ailments and maladies and has lost work, lost enjoyment of life and endured conscious pain, suffering and mental distress.

79. McAtee's actions were evil, wanton, willful, and malicious justifying the imposition of punitive damages in the amount of $20,000,000.00 to punish McAtee and to deter McAtee and others from engaging in similar conduct in the future.

**WHEREFORE**, Plaintiff prays this Court enter judgment in her favor in a fair and reasonable amount and for such other relief as the Court deems just and proper.

## COUNT III - WRONGFUL DEATH

80. Plaintiff incorporates the foregoing paragraphs by reference as if set forth more fully herein.

81. Plaintiff is the natural mother of Dylan Austin and the only class 1 beneficiary of Dylan Austin entitled to bring a claim for wrongful death in the state of Missouri.

82. Missouri law gives Plaintiff standing as decedent's mother to assert an action for personal injuries to her son resulting in his death.

83. McAtee owed Dylan Austin a duty of reasonable care.

84. In one or more respects set forth above, McAtee violated that duty of care.

85. As a direct and proximate result, Dylan Austin suffered mortal injuries.

86. At the time of the shooting, McAtee was acting in the scope and course of his employment with City of Niangua.

87. City of Niangua is vicariously liable for the actions of McAtee.

88. Defendants are jointly and severally liable for the wrongful death of Dylan Austin.

89. Plaintiff has suffered pecuniary loss and funeral expenses and loss of companionship and support of her son Dylan Austin.

90. Prior to his death, Dylan Austin suffered damages and injuries including assault, battery, abuse, cruel and unusual punishment, threats, intimidation, fear of imminent bodily harm, denial of proper and adequate medical care, pain and suffering, mental and emotional pain and anguish, and other violations by Defendants of rights secured to Plaintiff by the US Constitution.

91. McAtee's actions were evil, wanton, willful, and malicious justifying the imposition of punitive damages in the amount of $20,000,000.00 to punish McAtee and to deter McAtee and others from engaging in similar conduct in the future.

**WHEREFORE**, Plaintiff prays for judgment against Defendants in a fair and reasonable amount and for such other relief as the Court deems just and proper.

## COUNT IV - NEGLIGENCE – MELINDA AUSTIN

92. Plaintiff incorporates the foregoing paragraphs by reference as if set forth more fully herein.

93. Defendant McAtee had a duty to use reasonable care as to Plaintiff Melinda Austin.

94. Plaintiff was in the zone of danger at the time McAtee shot her son Dylan Austin in her home.

95. A familial relationship and bond of mother and son existed between Plaintiff and Dylan Austin.

96. She witnessed the shooting of her son and was at risk of bullets ricocheting and striking her.

97. She witnessed the shooting in the presence of a child who was asleep mere feet away.

98. As a direct and proximate result, she suffered medically diagnosable, medically significant emotional distress including fright, terror, anxiety, nightmares, trouble sleeping, elevated blood pressure and other physical ailments and maladies and has lost work, lost enjoyment of life and endured conscious pain, suffering and mental distress.

99. At the time of the shooting, McAtee was acting in the scope and course of his employment with City of Niangua.

100.    City of Niangua is vicariously liable for the actions of McAtee.

101.    Defendants are jointly and severally liable for Plaintiff's injuries.

102.    McAtee's actions were evil, wanton, willful, and malicious justifying the imposition of punitive damages in the amount of $20,000,000.00 to punish McAtee and to deter McAtee and others from engaging in similar conduct in the future.

**WHEREFORE**, Plaintiff prays this Court enter judgment in her favor in a fair and reasonable amount and for such other relief as the Court deems just and proper.

## COUNT V – PROPERTY DAMAGE

103.    Plaintiff incorporates the foregoing paragraphs by reference as if set forth more fully herein.

104.    McAtee had a duty to use reasonable care to avoid damaging Plaintiff's property.

105.    Defendants negligent and unjustified actions caused property damage to Plaintiff's home including her front door, TV, dresser, bedroom door frame, flooring, and other personal property.

106.    At the time of the shooting, McAtee was acting in the scope and course of his employment with City of Niangua.

107.    City of Niangua is vicariously liable for the actions of McAtee.

108.    Defendants are jointly and severally liable for Plaintiff's property damage.

109.    McAtee's actions were evil, wanton, willful, and malicious justifying the imposition of punitive damages in the amount of $20,000,000.00 to punish McAtee and to deter McAtee and others from engaging in similar conduct in the future.

    **WHEREREFORE**, Plaintiff prays this Court enter judgment in her favor in a fair and reasonable amount and for such other relief as the Court deems just and proper.

## COUNT VI - NEGLIGENT HIRING

110.    Plaintiff incorporates the foregoing paragraphs by reference as if set forth more fully herein.

111.    Defendant City of Niangua owed Plaintiff a duty to use reasonable care in hiring police officers authorized to use lethal force.

112.    Defendant breached its duty in one or more respects by:  Failing to conduct a reasonable background check prior to hiring McAtee; or conducting a background check and hiring McAtee who had a history of wrongfully

discharging his firearm in the line of duty; Failing to examine or consider McAtee's mental status and violent temperament.

113.    As a direct and proximate result, Plaintiff was damaged.

**WHEREREFORE**, Plaintiff prays this Court enter judgment in her favor in a fair and reasonable amount and for such other relief as the Court deems just and proper.

**COUNT VII -- NEGLIGENT SUPERVISION AND RETENTION**

114.    Plaintiff incorporates the foregoing paragraphs by reference as if set forth more fully herein.

115.    Defendant McAtee acted outside the scope and course of his duties by illegally targeting and stalking Dylan Austin.

116.    Defendant City of Niangua had a duty to supervise McAtee.

117.    Niangua had no employees capable of supervising McAtee.

118.    McAtee was the sole law enforcement officer.

119.    If City of Niangua provided adequate supervision or any supervision at all, it would have ascertained that McAtee was acting outside of the scope and course of his employment and illegally targeting, harassing and following Dylan Austin and would have thereafter dismissed McAtee.

120.    Instead, City of Niangua negligently retained McAtee as a police officer, leaving him free to orchestrate a campaign of fear and intimidation against Dylan Austin.

121.    Defendant City of Niangua breached its duty to supervise McAtee.

122.    As a direct and proximate result, Plaintiff was damaged.

WHEREFORE, Plaintiff prays this Court enter judgment in her favor in a fair and reasonable amount and for such other relief as the Court deems just and proper.

## COUNT VIII -- FAILURE TO TRAIN

123.     Plaintiff incorporates the foregoing paragraphs by reference as if set forth more fully herein.

124.     Defendant City of Niangua had a duty to train McAtee.

125.     Had Niangua properly trained McAtee, he would not have engaged in the actions and omissions that caused or contributed to cause the death of Dylan Austin more particularly described above.

126.     Niangua had no employees capable of training McAtee.

127.     McAtee was the sole law enforcement officer.

128.     Defendant City of Niangua breached its duty to train McAtee.

129.     As a direct and proximate result, Plaintiff was damaged.

WHEREFORE, Plaintiff prays this Court enter judgment in her favor in a fair and reasonable amount and for such other relief as the Court deems just and proper.


**DOUGLAS, HAUN & HEIDEMANN, P.C.**
901 E. St. Louis St., Suite 1200
Springfield, MO 65806
Telephone:  (417) 422-4090
craig@dhhlawfirm.com


By     /s/ Craig R. Heidemann
       Missouri Bar No. 42778
       Attorney for Plaintiff